George F. Egberts, J.
On September 22, 1973, the defendant, Norris Eivers, was arrested and charged with violating subdivision 3 of section 265.05 of the Penal Law, possession of a loaded firearm. The alleged firearm was a ;22 calibre Eohm BG8 revolver loaded with two live rounds of ammunition and one spent shell. The gun was colored black and the barrel of the revolver was clear.
At a preliminary hearing held on September 26, 1973, the ballistics report, containing a statement that the gun was not operable, was entered into evidence. Since the gun was inoperable, the Penal Law violation was dismissed on the ground that an inoperable revolver is not a firearm within the meaning of the statute (see People v. Grillo, 15 A D 2d 502, affd. without opn. 11 N Y 2d 841). The defendant was then charged with possessing an imitation revolver in violation of subdivision g of section 436-5.0 of the Administrative Code of the City of New York.
The Administrative Code provision, as it applies to this case, provides that: “ It shall be unlawful for any person to * * * possess # * * any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver, unless said imitation or toy pistol or revolver shall be colored in colors other than black, blue, silver or aluminum, and further provided that the barrel of said toy or imitation pistol or revolver shall be closed with the same material of which the toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front end of said barrel.”
The defendant has now moved to dismiss the informatiom The first asserted ground is that the revolver found in defendant’s possession is not an imitation pistol or revolver within the meaning of the statute.
The question of whether a concededly real gun becomes an imitation pistol or revolver when the gun is found to be inoperable, is one which does not appear to have been answered in this jurisdiction. While the issue of what an imitation gun is, was discussed generally in Matter of Don R. B. (66 Misc 2d 279) which involved a violation of subdivision 9 of section 265.05 of *974 the Penal Law, the decision in that case rested on the failure of the prosecution to prove that there was an intent to use the weapon unlawfully against another and not on a finding that the inoperable home-made gun was or was not an imitation pistol.
Neither the court nor counsel has been able to discover any case law in this jurisdiction on the precise question mentioned above.
It is the decision of this court that an inoperable real pistol or revolver cannot be considered an imitation pistol br revolver under subdivision g of section 436-5.0 of the Administrative Code of the City of New York. The court feels that this conclusion is mandated by the legislative history of the statute.
Subdivision g of section 436-5.0 was first introduced in the New York City Council in December, 1954 (Proceedings of the Council of the City of New York, vol. 2, p. 475, July, 1954 to Dec. 1954). The Report of the Committee on General Welfare, which accompanied the bill’s reintroduction on January 18, 1955, stated that “ This bill has for its purpose the prevention of the manufacture, sale, possession and use of toy pistols which are so closely imitative of real ones as to be used or usable for nefarious purposes.” (emphasis supplied) (Proceedings of the Council of the City of New York, vol. 1, p. 24, Jan. 1955 to June, 1955). Both of the afore-mentioned bills differed somewhat from the bill which was finally enacted. The section, as finally enacted, was not passed until March 8,1955. The Report of the Committee on General Welfare, which accompanied this final version of the bill, stated that:
“ This bill will forbid the sale, possession or use of anyioy or imitation pistols or revolvers where same are substantial duplicates of actual pistols or revolvers unless same have a closed barrel and are finished in colors other than black, blue, silver or aluminum.
“ This bill does not forbid or restrict the sale, possession or Use of true toy pistols or revolvers, provided same are not substantial duplicates of actual pistols or revolvers.
“ This bill does not forbid or restrict the sale, possession or use of the vast majority of toys referred to by the manufactúrers as * western ’ models, where said toy does not substantially duplicate actual models in dimensions, finish, operation and appearancé.
■ “ The purpose of this bill is to prevent the ¡sale, possession or use of models so closely copied from actual weapons as not to be readily discernible as toys. The Committee recommends approval as amended.” (Proceedings of the Council of the *975 City of New York, vol. 1, p. 296, Jan., 1955 to June, 1955; emphasis supplied.)
In view of the legislative history of the bill, its declared purpose to prevent the sale and possession of toy pistols and models which are copies of actual weapons, the court cannot hold that it was the Legislature’s intent to include real weapons, though inoperable, as imitation weapons. The language of the committee ’s report clearly shows that the Legislature was concerned solely with prohibiting a model of a weapon and not the actual weapon itself. A real revolver, even if inoperable, is not a model. One should not play a game of semantics with this statute by pretending that a concededly inoperable real revolver is a copy of a real revolver. Certainly, one would not call a broken radio a copy of a real radio or a defective toaster a copy of a real toaster.
The court does recognize that its holding leads to a situation which seems incongruous: the possession of a model pistol or revolver is illegal while possession of the authentic article is legal if it is inoperable.
It is inappropriate for the court to speculate as to the reason behind the City Council’s failure to include inoperable real pistols and revolvers within the scope of the statute. The fact remains that the seemingly incongruous result will continue until a law specifically covering possession of such weapon is enacted. A court should not interpret a statute in a manner which is clearly inconsistent with the legislative intent. The wisdom of a particular legislative enactment is not within the scope of the judiciary’s function.
Even if the court had been unable to ascertain the Council’s intent in enacting the statute, the court might have come to the same conclusion based solely on an interpretation of the words of the statute. The words used in a statute must be given their natural meaning (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 94). The word “ imitation ’ ’ is defined as ‘c something that is made or produced as a copy: an artificial likeness. ’ ’ (Webster’s Third New International Dictionary, p. 1129 [1966].) In view of this definition, it is questionable whether a court could properly interpret the Administrative Code provision containing the phrase “ imitation pistol or revolver ” as meaning a real pistol or revolver which is inoperable.
The motion to dismiss the information is granted on the ground that an inoperable real revolver or pistol does not come within the scope of the Administrative Code provision. In view of the court’s finding on this point, the court finds it unnecessary to pass on the other contention raised by the defendant.